UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LLOYD HENRY PHILLIPS** | : | **DOCKET NO. 2:05-cv-926**<br>**Section P** |
| **VS.** | : | **JUDGE MINALDI** |
| **GLOBAL EXPERTISE IN OUTSOURCING, ET AL.** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Currently before the court are cross motions for summary judgment filed by the plaintiff, Lloyd Henry Phillips [doc. 63] and on behalf of defendant Chris Wharton[1] [doc. 69]. These motions have been referred to the undersigned magistrate for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

## FACTUAL SUMMARY

At all times pertinent to this civil rights action, plaintiff was incarcerated in Allen Correctional Center. During that time plaintiff had a restricted duty status. On the morning of May 26, 2004, defendant Chris Wharton was making his routine inspection of the Saturn housing unit when he observed that several inmates, including plaintiff, had taken their foot lockers from beneath their beds and hooked them onto the foot of their beds. *See* Affidavit of Chris Wharton, Doc.69, Exhibit A, ¶ 4. Wharton instructed all such inmates to remove the footlockers from the foot of their beds and to place them back under their beds. *Id.; see also* Declaration of Plaintiff, Doc. 63-1.

---

[1] Plaintiff also named Global Expertise in Outsourcing, and the Louisiana Department of Public Safety & Corrections as defendants in this matter. However, the undersigned has prepared a Report and Recommendation wherein he recommended the dismissal of these defendants.

In his motion for summary judgment, the plaintiff states that he reminded Wharton at that time that he had a duty status but that Wharton responded "I don't care what your duty status says, put the locker on the floor." However, in his affidavit, Wharton states that he gave the instruction to place the footlockers under the beds without waiting to make sure that the inmate complied with this instructions and that no inmate stopped Wharton to explain why the footlocker had been moved or to offer any reason why he should be allowed to keep the locker at the foot of the bed. *See* Doc. 69, Exhibit A, ¶ ¶ 4, 6.

In response to Wharton's instructions, another inmate volunteered to remove plaintiff's locker from the foot of his bed and place it under his bed. *See* Doc. 63-1, p.5. Later that same morning, plaintiff states that he needed to take a shower to relieve his back pain and that he attempted to pull his locker from under his bed to retrieve his Bio-Sentry Ultra Strength Pain Relief Cream. Plaintiff claims that he "heard and felt something pop in his neck" and "was unable to move from his neck down to his waist, with pain from the waist down." *Id.* A correctional officer telephoned the infirmary about plaintiff's medical emergency, and he was seen in sick call later that day.

Plaintiff claims that Wharton violated his Eighth Amendment rights by ordering him to keep his locker under his bed instead of at the foot of his bed because such order violated his medical restriction. He contends that in enforcing this condition of confinement, Wharton was deliberately indifferent to his medical condition and restricted work status. He seeks summary judgment in his favor.

Wharton has filed a cross motion for summary judgment in which he argues that he was unaware of the plaintiff's duty status at the time that he gave the instruction to move the footlocker.

2

Further, Wharton points out that plaintiff was not injured as a result of his order but that the injury occurred later when plaintiff attempted to retrieve the locker without assistance in contravention of his medical restriction not to move more than 25 pounds. Wharton also argues that, in accordance with Rule VIII(5) of the Louisiana Department of Public Safety and Corrections Disciplinary Rules and Procedures for Adult Inmates, plaintiff could have disobeyed the order to remove the footlocker from his bed and explained to Wharton that he had a restricted duty status and should not have to keep his locker under his bed.

## SUMMARY JUDGMENT PRINCIPLES

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. However, the movant does not need to negate the elements of claims on which the nonmoving parties would bear the burden of proof at trial.

The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. To meet this burden, the nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claims. As to material facts on which the nonmovant will bear the burden of proof at trial, the nonmovant must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial. If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. *Stults v. Conoco, Inc.*, 76 F.3d 651 (5th Cir. 1996).

The non-movant cannot satisfy this summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Wilson Industries, Inc. v. Aviva America, Inc.,* 185 F.3d 492, 493 (5th Cir. 1999), citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). Furthermore, it is noted that Rule 56 does not impose upon the district court a duty

to sift through the record in search of evidence to support a party's opposition to summary judgment. *Stults, supra.*

## LAW AND ANALYSIS

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825 (1994). A prison official violates this duty when, by act or omission, he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm to the inmate. *Id.* at 834.

"To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998). See *Farmer v. Brennan*, 511 U.S. at 837 (holding that the subjective test for deliberate indifference requires that the official both know of and disregard an excessive risk of harm). The legal conclusion of deliberate indifference must rest on facts clearly evincing "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers*, 106 S.Ct. 1078 (1986).

To demonstrate that Wharton acted with deliberate indifference to plaintiff's health by requiring him to keep his footlocker under his bed, plaintiff relies on the unverified statement in his motion that he reminded Wharton that he had a duty status at the time Wharton was making rounds and gave plaintiff the instruction to remove the footlocker from the bed. In opposition to the plaintiff's motion for summary judgment and in support of his own motion for summary judgment,

Wharton has come forward with summary judgment evidence to support his contention that he was unaware of plaintiff's duty status on May 26, 2004 and that plaintiff did not notify him of a restricted duty status on that date. His sworn declaration states in pertinent part as follows:

> 6. None of the inmates, including Inmate Phillips, stopped me to explain why he had moved his footlocker or to offer any reason why he should be allowed to keep his footlocker at the end of his bed.
>
> 7. Inmate Phillips did not advise me when I instructed him to relocate his footlocker that he had a duty status that would not allow him to move the footlocker himself or to push or pull the footlocker from beneath his bed.
>
> 8. Sometime after Inmate Phillips allegedly suffered an injury from trying to pull his footlocker frm under his bed, Inmate Phillips advised me he had a limited duty status. Upon being told this by Inmate Phillips, I contacted the infirmary at Allen Correctional Center and confirmed with medical personnel that Inmate Phillips did have a duty status that limited his ability to lift, push and pull objected in excess of a certain weight.
>
> 9. Prior to Inmate Phillips advising me of his limited duty status, and me confirming that duty status with medical personnel, I was not aware Inmate Phillips had a duty status that would preclude him from lifting, pushing and pulling objects. Had Inmate Phillips told me of his duty status at the time I instructed him to move his footlocker, I would have advised him to wait until I confirmed his duty status.

Additionally, Wharton pointed out that a policy of Allen Correctional Center requires all inmates "with a special or restricted duty status to keep his duty status documentation on his person at all times to be produced to prison personnel when needed." *See* Doc. 69-2, Exhibit A, ¶ 12. Wharton's sworn declaration indicates that plaintiff did not produce such documentation to him. Further, plaintiff does not contend that he produced such documentation to Wharton at the time that Wharton gave the instruction to move the footlocker.

Wharton argues that not only did he not know of plaintiff's restricted duty status but that he also did not draw an inference that requiring the plaintiff to place the footlocker under plaintiff's bed

would pose an excessive risk to plaintiff's health. He points out that he was aware that plaintiff performed the duties of an orderly in the dormitory and that such duties included the moving of beds and footlockers. *Id.*, ¶ 10. Additionally, Wharton argues that he observed the footlocker on top of plaintiff's bed and reasonably assumed that plaintiff had moved the footlocker to his bed.

Having considered the summary judgment evidence submitted by both parties, the court finds that there is nothing in the record to support a finding that Wharton acted with deliberate indifference to plaintiff's health when he issued the instruction on May 26, 2004 for plaintiff to move his footlocker from the foot of his bed. Not only does the evidence refute a finding that Wharton was aware of facts from which an inference of an excessive risk to plaintiff's health could be drawn, there is also nothing in the record to suggest that he actually drew an inference that potential for harm existed.

Accordingly,

IT IS RECOMMENDED that the Motion for Summary Judgment filed by plaintiff, Henry Lloyd Phillips, be DENIED.

IT IS FURTHER RECOMMENDED that the Motion for Summary Judgment filed on behalf of the defendant, Chris Wharton, be GRANTED and that this civil rights action be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10)**

**BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, July 12, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE